**IN THE UNITED STATES DISTRICT COURT
FOR THESOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **GREGORY GILREATH, and EULA GILREATH, on behalf of themselves, Individually, and on behalf of all other persons similarly situated,** | ) ) ) ) ) | |
| **Plaintiffs,** | ) ) | |
| **v.** | ) ) | **Civil Action No.: _____** |
| **TOTAL SAFETY U.S., INC. and the TOTAL SAFETY U.S., INC. EMPLOYEE HEALTH AND WELFARE BENEFIT PLAN,** | ) ) ) ) ) ) | |
| **Defendants.** | ) | |

## CLASS ACTION COMPLAINT

Plaintiffs Gregory Gilreath and Eula Gilreath ("Plaintiffs"), on behalf of themselves, individually, and on behalf of all other persons similarly situated, by and through their attorneys, allege as follows:

## NATURE OF THE ACTION

1.     This is a civil enforcement action brought pursuant to Sections 502(a)(1)(A), (a)(1)(B), (a)(3), (c)(1), and (g)(1) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1132(a)(1)(A), (a)(1)(B), (a)(3), (c)(1), and (g)(1) concerning the failure of Total Safety U.S., Inc. ("Total Safety"), the plan sponsor of the Total Safety Employee Health and Welfare Benefit Plan ("Total Safety Health Plan" or "the Plan"), to provide participants and beneficiaries in the Total Safety Health Plan with (1) the general notice of their rights under the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA") at the time of commencement of coverage under the Total Safety Health Plan (commonly referred to as the

1

"General Rights Notice" or the "Initial Rights Notice"); (2) a copy of the Summary Plan Description ("SPD") for the Total Safety Health Plan within ninety (90) days after the employee becoming a participant in the Plan; (3) the notice of their rights to elect continuation coverage under COBRA upon the occurrence of a qualifying event under COBRA (commonly referred to as the "Continuation Coverage Election Notice"); and (4) the same opportunity to elect other medical coverage as other Plan participants during an open enrollment period (commonly referred to as the "Open Enrollment Notice"). Because Total Safety, as plan sponsor, did not provide these COBRA notices and the SPD to participants and beneficiaries in the Total Safety Health Plan, Total Safety, as the Plan Administrator, and the Total Safety Health Plan failed to provide the notices required by COBRA, informing participants and beneficiaries of their rights under those provisions of ERISA. Further, Total Safety, as an employer of persons covered by the Total Safety Health Plan, did not notify the Total Safety Health Plan Administrator (alleged here also to be Total Safety) of the COBRA qualifying events described in Section 603(2) of ERISA, 29 U.S.C. §§ 1163(2).

2.      Defendant Total Safety's failure to provide COBRA coverage deprived Plaintiffs and the Class of necessary health coverage to which they were entitled by law. The failure of Total Safety and the Total Safety Health Plan (administered by Total Safety) to provide statutorily required COBRA notices and the SPD prevented Plaintiffs and the Class from exercising their rights to COBRA coverage and made Total Safety and the Total Safety Health Plan liable to Plaintiffs and the Class for statutory penalties of up to $110.00 a day for each failure to give notice to a Total Safety Health Plan participant or beneficiary (referred to in COBRA as covered employees and spouses and qualified beneficiaries depending on the nature of the notice obligation breached).

3.      Plaintiff Gregory Gilreath ("Mr. Gilreath") was employed by Total Safety from April 2016 until September 2016. Upon commencement of participation in the Plan, Total Safety failed to provide Plaintiff Mr. Gilreath with the Initial Rights Notice required by COBRA. Total Safety also failed to provide him with the SPD for the Total Safety Health Plan. After his employment with Total Safety ended, Total Safety failed to provide Mr. Gilreath with the Continuation Coverage Election Notice as required by COBRA, and he has not been offered continuation health care coverage by Total Safety or anyone acting on behalf of Total Safety or the Total Safety Health Plan. Not surprisingly, since Total Safety failed to provide the Continuation Coverage Election Notice which would have allowed Mr. Gilreath to elect continuation coverage, Total Safety also failed to provide Mr. Gilreath with the Open Enrollment Notice at the time that Total Safety employees and participants in the Plan were able to select their health care coverage under the Plan.

4.      Plaintiff Eula Gilreath ("Ms. Gilreath") is the spouse of Gregory Gilreath and a qualified beneficiary under the Total Safety Health Plan. When Mr. Gilreath's participation in the Plan commenced, Total Safety failed to provide Plaintiff Mrs. Gilreath with the Initial Rights Notice required by COBRA. Total Safety also failed to provide Mr. Gilreath and Mrs. Gilreath with the SPD for the Total Safety Health Plan. When Mr. Gilreath's employment with Total Safety ended, Total Safety failed to provide Mrs. Gilreath with the Continuation Coverage Election Notice as required by COBRA, explaining her right to obtain COBRA continuing healthcare coverage, and she has not been offered continuation health care coverage by Total Safety or anyone acting on behalf of Total Safety or the Total Safety Health Plan. Not surprisingly, since Total Safety failed to provide the Continuation Coverage Election Notice which would have allowed Mr. Gilreath or Mrs. Gilreath to elect continuation coverage, Total Safety also failed to provide

Mrs. Gilreath with the Open Enrollment Notice at the time that Total Safety employees and participants in the Plan were able to select their health care coverage under the Plan.

5.      Plaintiffs respectfully ask this Court to certify this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure and for: (1) an injunction requiring Total Safety to allow qualified beneficiaries to elect COBRA coverage in the Total Safety Health Plan; (2) an injunction appointing an independent administrator to bring the Total Safety Health Plan into compliance with COBRA; (3) a declaration that Plaintiffs and the Class are entitled to the benefits they would have received had they been provided the opportunity to elect COBRA continuation coverage during the Class period; and (4) statutory penalties against Total Safety and the Total Safety Health Plan for the failure to provide the statutory notices required by COBRA, including (a) the Initial Rights Notice, (b) the SPD, (c) the Continuation Coverage Election Notice, and (d) the Open Enrollment Notice.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and ERISA Section 502(a) and 502(e), 29 U.S.C. §§ 1132(a) and 1132(e). This Court has jurisdiction, without respect to the amount in controversy, to grant the relief provided for in ERISA Section 502(a), 29 U.S.C. §§ 1132(a), in any action.  ERISA Section 502(f), 29 U.S.C. § 1132(f).

7.      This Court has personal jurisdiction over Defendants because Total Safety and the Total Safety Health Plan transact business in, and have significant contacts with, this District; because the Total Safety Health Plan is administered in this District; the breaches of the obligations owed to the Plaintiffs and the Class occurred within this District; and because ERISA provides for nationwide service of process. *See* ERISA Section 502(e)(2), 29 U.S.C. § 1132(e)(2).

8.      Venue is proper in this Court pursuant to ERISA Section 502(e)(2), 29 U.S.C. § 1132(e)(2), because: (a) Defendant Total Safety is found in this district; (b) Defendant Total

Safety Health Plan is maintained and provides benefits to its participants and their beneficiaries in this district; and (c) Plaintiffs were denied the right to elect COBRA continuation coverage and receive benefits from the Total Safety Health Plan in this district.

## PARTIES

9.     Plaintiff Gregory Gilreath is a former employee of Total Safety who was a participant and covered employee in the Total Safety Group Health Plan the day before he was terminated from employment with Total Safety, a qualifying event within the meaning of ERISA Section 603(2), 29 U.S.C. § 1163(2). Accordingly, Mr. Gilreath is and was a qualified beneficiary of the Plan within the meaning of ERISA Section 607(3), 29 U.S.C. § 1167(3). Because he has a colorable claim for benefits under the Total Safety Health Plan, he continues to be a participant in the Plan pursuant to Section 3(7) of ERISA, 29 U.S.C. § 1002(7).

10.     Plaintiff Eula Gilreath is the spouse of Mr. Gilreath, who is a former employee of Total Safety and a participant and covered employee in the Total Safety Health Plan the day before he was terminated from employment with Total Safety, a qualifying event within the meaning of ERISA Section 603(2), 29 U.S.C. § 1163(2). Accordingly, Ms. Gilreath is and was a qualified beneficiary of the Plan within the meaning of ERISA Section 607(3), 29 U.S.C. § 1167(3). Because she has a colorable claim for benefits under the Total Safety Health Plan, she continues to be a participant in the Plan pursuant to Section 3(7) of ERISA, 29 U.S.C. § 1002(7).

11.     Defendant Total Safety U.S., Inc. is based in Houston, Texas and employed twenty five (25) or more employees on a typical business day during the 2014, 2015, 2016, 2017, 2018, and 2019 calendar years. Total Safety is an employer within the meaning of ERISA Section 607(4), 29 U.S.C. § 1167(4). Total Safety established and maintains the Total Safety U.S., Inc. Employee Health and Welfare Benefit Plan and is the plan sponsor of the Plan within the meaning of ERISA Section 3(16)(B), 29 U.S.C. §1002(16)(B), and the administrator of the Plan within the meaning

5

of ERISA Section 3(16)(A), 29 U.S.C. § 1002(16)(A).

12.     Defendant Total Safety U.S., Inc. Employee Health and Welfare Benefit Plan provides medical, dental and/or vision benefits to employees of Total Safety and their beneficiaries directly or through insurance, reimbursement or otherwise and is an employee welfare benefit plan within the meaning of ERISA Section 3(1), 29 U.S.C. § 1002(1) and a group health plan within the meaning of ERISA Section 607(1), 29 U.S.C. § 1167(1). The Total Safety Health Plan is administered and maintained in Houston, Texas primarily for the benefit of employees of Total Safety and their spouses and families.

## CLASS ACTION ALLEGATIONS

13.     Plaintiffs bring this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the following persons:

> **The Class:** For the period June 20, 2015 to the present, all employees of Total Safety who were covered employees, participants, or qualified beneficiaries in the Total Safety Health Plan together with their spouses and other covered dependents who were participants or qualified beneficiaries in the Total Safety Health Plan and who did not receive (a) the Initial Rights Notice upon the commencement of coverage in the Total Safety Health Plan, (b) a copy of the SPD for the Total Safety Health Plan within ninety (90) days after the employee becoming a participant in the Plan, (c) the Continuation Coverage Election Notice within fourteen (14) days of the occurrence of a qualifying event under COBRA, (d) the opportunity to elect continuation health care coverage, (e) the Open Enrollment Notice, and/or (f) the same opportunity to elect other medical coverage as other Plan participants during an open enrollment period.

14.     **Numerosity.** The members of the Class are so numerous that joinder of all the Class members is impracticable. On information and belief, the Class is comprised of more than 500 employees and spouses who elected coverage under the Total Safety Health Plan and are or were covered employees, participants and/or qualified beneficiaries in the Plan since June 20, 2015 and who did not receive (a) the Initial Rights Notice upon the commencement of coverage in the Total Safety Health Plan, (b) a copy of the SPD for the Total Safety Health Plan within ninety (90) days after the employee becoming a participant in the Plan, (c) the Continuation Coverage Election Notice within fourteen (14) days of the occurrence of a qualifying event under COBRA, (d) the opportunity to elect continuation health care coverage, (e) the Open Enrollment Notice, and/or (f) the same opportunity to elect other medical coverage as other Plan participants during an open enrollment period. All of these current and former employees and spouses are members of the Class.

15.     **Commonality.** This case presents numerous common questions of law and fact. The following questions of law and fact are among those applicable to the members of the Class:

a.     Whether Total Safety is an employer within the meaning of ERISA Section 607(4), 29 U.S.C. § 1167(4).

b.     Whether the Total Safety Health Plan is a group health plan within the meaning of ERISA Section 607(1), 29 U.S.C. § 1167(1).

c.     Whether Total Safety is the Plan Sponsor of the Total Safety Health Plan.

d.     Whether Total Safety is the Plan Administrator for the Total Safety Health Plan.

e.     Whether Total Safety violated ERISA Section 606(a)(1), 29 U.S.C. § 1166(a)(1), when it failed to provide the Initial Rights Notice to a covered

employee, spouse, and/or qualified beneficiary upon the commencement of coverage in the Total Safety Health Plan.

f.    Whether Total Safety violated ERISA when it failed to provide a copy of the SPD for the Total Safety Health Plan to the employee and/or qualified beneficiary within ninety (90) days after the employee becoming a participant in the Plan. *See* 29 U.S.C. § 1024(b)(1).

g.    Whether Total Safety violated ERISA Section 606(a)(4), 29 U.S.C. § 1166(a)(4), when it failed to provide the Continuation Coverage Election Notice to a covered employee upon the occurrence of a qualifying event, as defined by COBRA and ERISA.

h.    Whether Total Safety violated ERISA § 601, 29 U.S.C. § 1161, when it failed to provide continuation coverage to participants of the Total Safety Health Plan who elected coverage under the Plan prior to the occurrence of a qualifying event.

i.    Whether Total Safety failed to provide notice of continuation coverage to qualified beneficiaries of the Total Safety Health Plan.

j.    Whether Total Safety violated ERISA § 601, 29 U.S.C. § 1161, when it failed to provide continuation coverage to qualified beneficiaries of the Total Safety Health Plan.

k.    Whether Total Safety violated ERISA, when it failed to provide the Open Enrollment Notice to a covered employee, spouse, and/or qualified beneficiary upon the occurrence of an annual open enrollment period for employees and qualified beneficiaries of the Total Safety Health Plan.

l.   Whether Total Safety, as the Total Safety Health Plan Administrator and Plan Sponsor, and the Total Safety Health Plan violated the COBRA notice provisions of ERISA Sections 606 (a)(1), (2) and (4), 29 U.S.C. § 1166 (a)(1),(2) and (4).

m.   Whether members of the Class are entitled to statutory penalties under ERISA § 502(c)(1), 29 U.S.C. § 1132(c)(1), for the failure to provide (a) the Initial Rights Notice upon the commencement of coverage in the Total Safety Health Plan, (b) a copy of the SPD for the Total Safety Health Plan within ninety (90) days after the employee becoming a participant in the Plan, (c) the Continuation Coverage Election Notice within fourteen (14) days of the occurrence of a qualifying event under COBRA, (d) the opportunity to elect continuation health care coverage, (e) the Open Enrollment Notice, and/or (f) the same opportunity to elect other medical coverage as other Plan participants during an open enrollment period.

16.   **Typicality**. Plaintiffs' claims are typical of the claims of the Class because they were covered employees, participants and/or qualified beneficiaries in the Total Safety Health Plan who elected coverage under the Plan, were entitled to notice of COBRA rights, were entitled to elect COBRA coverage, and are seeking enforcement of COBRA rights on behalf of themselves and members of the Class.

17.   **Adequacy.** Plaintiffs will fairly and adequately protect the interests of the members of the Class because of the following reasons:

a.   Plaintiffs have no interests antagonistic to or in conflict with the interest of the Class they seek to represent.

    b.    Plaintiffs are willing to participate in and vigorously represent the interests of the Class they seek to represent.

    c.    Plaintiffs have retained counsel to represent them and the Class and their counsel has significant experience prosecuting class actions in general and ERISA litigation specifically.

18.    **Rule 23(b)(1)(B).** The requirements of Rule 23(b)(1)(B) are met in this action because prosecution of separate actions by the members of the Class would create a risk of adjudication with respect to individual members of the Class which would, as a practical matter, be dispositive of the interests of other members not parties to the actions, or substantially impair or impede the ability to protect their interests.

19.    **Rule 23(b)(1)(A).** The requirements of Rule 23(b)(1)(A) are met in this action because the prosecution of separate actions by the members of the Class would create a risk of establishing incompatible standards of conduct for Defendants.

20.    **Rule 23(b)(2)**. The requirements of Rule 23(b)(2) are met in this action because Defendants have acted or refused to act on the grounds generally applicable to the Class, and final injunctive, declaratory and other appropriate relief with respect to the Class as a whole is appropriate. As to the claims asserted pursuant to ERISA Section 502(a)(3), 29 U.S.C. § 1132(a)(3), the only available relief is equitable relief.

21.    **Rule 23(b)(3)**. Additionally and alternatively, the requirements of Rule 23(b)(3) are met because the questions of law and/or fact set forth above are not only common, but will predominate over any individual questions in this action. A class action is superior to other available methods for the fair and efficient adjudication of this litigation.

## FACTUAL ALLEGATIONS

22.    Defendant Total Safety U.S., Inc. a Delaware corporation with its principal place

of business located at 11111 Wilcrest Green Drive, Houston, Texas 77042.

23.     Total Safety is "the leading global provider of integrated industrial safety services, strategies and equipment." Based in Houston, Texas, Total Safety operates from 165 locations in 23 countries. On information and belief, Total Safety employs approximately 1500 people within the United States and throughout the world.

24.     During the Class Period, Defendant Total Safety provided its employees and the covered beneficiaries of the employees with health care coverage. Total Safety provided medical insurance for employees working in the United States through the Total Safety Group Health Plan. Upon information and belief, Defendant Total Safety has never provided a Summary Plan Description in compliance with ERISA to employees and their spouses and families covered by the Total Safety Group Health Plan.

25.     On or about April 14, 2016, Gregory Gilreath was extended an offer of employment from Total Safety. On or about April 15, 2016, Mr. Gilreath signed the offer letter, indicating his acceptance to its terms. He was employed as a Pipefitter Foreman, beginning on April 22, 2016.

26.     As an employee of Total Safety, Mr. Gilreath was eligible for paid vacation, a personal floating holiday, the Health & Welfare and 401(k) Retirement plans, and other employee benefits outlined in the Total Safety Employee Handbook.

27.     When Mr. Gilreath became eligible to enroll in the Total Safety Health Plan, he did so for himself and his spouse, Eula Gilreath.

28.     Upon the commencement of his and Mrs. Gilreath's coverage in the Total Safety Health Plan, Total Safety failed to send to either Mr. Gilreath or Mrs. Gilreath the Initial Rights Notice, as required by ERISA.

29.     Likewise, Total Safety failed to send a copy of the SPD for the Total Safety Health Plan to Mr. Gilreath or Mrs. Gilreath within ninety (90) days after Mr. Gilreath became a participant in the Plan.

30.     On May 16, 2016, Mr. Gilreath was injured in a multi-car motor vehicle accident while returning back to Total Safety's shop in Pasadena, Texas. Although Mr. Gilreath was working at the time of the accident, Total Safety told Mr. Gilreath to file a medical claim under the Total Safety Group Health Plan. Mr. Gilreath did so.

31.     In June 2016, Mr. Gilreath was diagnosed with "discogenic cervical and lumbar pain and a right knee contusion as a direct result of the motor vehicle accident." In July 2016, it was determined that Mr. Gilreath had a partial tear of the ACL.  On August 24, 2016, Mr. Gilreath had knee arthroscopy, revision ACL reconstruction, and bone marrow aspiration. Total Safety told Mr. Gilreath to use the Total Safety Group Health Plan for the surgery and treatment of his injuries.

32.     After his surgery, Mr. Gilreath determined that his Total Safety should have filed a workers' compensation claim for his injuries. On August 31, 2016, Mr. Gilreath emailed Michael Brady, Sr. Manager – Human Resources North America for Total Safety, and requested that Total Safety file a workers' compensation claim for his injuries. Mr. Gilreath stated: "**this is also a Workers Compensation claim, and should have been processed as such. I was on the clock, and getting paid for my duties**."

33.     Rather than indicate that he would ensure that Total Safety would file a workers' compensation claim, Mr. Brady responded: "**Thank you for sharing. I appreciate it.**"

34.     Six (6) days later, on September 6, 2016, Total Safety terminated Mr. Gilreath's employment. At the time of his termination, Mr. Gilreath was still recuperating from his injuries and the surgery and was using crutches while walking. Mr. Gilreath had not been released to return

to work at that time.

35.     Unbeknownst to Mr. Gilreath at the time, individuals within Total Safety's Human Resource Department were discussing Mr. Gilreath's injuries and the possible termination of his employment. Indeed, on August 29, 2016, Joe Saad, HR Manager sent an email to David Brown, VP of Human Resources for Total Safety, and Aurora Chalbaud Schmidt, Sr. HR Manager – Total Rewards for Total Safety, which stated: **"Regarding termination, he [Mr. Gilreath] is protected under two scenarios: FMLA and ADA."** Total Safety terminated Mr. Gilreath seven (7) days later.

36.     Total Safety terminated Mr. Gilreath because he sustained on the job injuries and requested that Total Safety file a workers' compensation claim on his behalf. As of the date of his termination, Total Safety had not initiated a workers' compensation claim with the Texas Department of Insurance for Mr. Gilreath's injuries. Rather, Total Safety contended that Mr. Gilreath's injuries were personal in nature.

37.     While Total Safety required Mr. Gilreath to file medical claims with the Total Safety Group Health Plan, neither Total Safety nor the Total Safety Group Health Plan provided the Continuation Coverage Election Notice to Mr. Gilreath following the termination of his employment.

38.     Neither Total Safety nor the Total Safety Group Health Plan provided the Continuation Coverage Election Notice to Mrs. Gilreath following the termination of Mr. Gilreath's employment.

39.     Since Total Safety was both the Plan Sponsor and Plan Administrator of the Total Safety Health Plan, Total Safety was required to send the Continuation Coverage Election Notice within fourteen (14) days of the occurrence of a qualifying event under COBRA.

40.    Total Safety's failure to send the Continuation Coverage Election Notice to Mr. Gilreath, Total Safety deprived Mr. Gilreath of his right to elect continuation healthcare coverage under COBRA. As a result, Mr. Gilreath was without the necessary medical treatment to properly recover from his on the job injuries.

41.    Mr. Gilreath's spouse, Eula Gilreath, worked with Mr. Gilreath to help strengthen his leg and help him recover.

42.    On September 9, 2016, Mr. Gilreath filed an Employee's Claim for Compensation for a Work-Related Injury or Occupational Disease with the Texas Department of Insurance – Division of Workers' Compensation. Total Safety, through its workers' compensation carrier, denied the claim. On January 16, 2017, the Texas Department of Insurance – Division of Workers' Compensation, found that Total Safety had failed to timely failed to report Mr. Gilreath's injury. As a result, the Texas Department of Insurance issued a Warning Letter to Total Safety.

43.    On February 24, 2017, the Texas Department of Insurance – Division of Workers' Compensation found that Mr. Gilreath was, in fact, injured in the course and scope of his employment and awarded workers' compensation benefits to him.

44.    Following his wrongful termination, Mr. and Mrs. Gilreath were left without medical and dental benefits. As of today's date, neither Total Safety nor the Total Safety Group Health Plan have provided Mr. Gilreath with a notice of his right to elect continuation health care coverage.

45.    If Mr. Gilreath had received a notice of his right to elect continuation health care coverage as required by COBRA and ERISA, Mr. Gilreath would have elected coverage for him and his spouse under the Total Safety Group Health Plan. Mr. Gilreath needed the insurance benefits under the Plan in order to obtain medical care and treatment for his knee and the injuries

that he sustained as a result of the motor vehicle accident.

46.     In  addition to the need for the medical benefits under the Total Safety Group Health Plan to care for his knee, Mr. Gilreath has experienced other medical and dental conditions that would have been covered under the Plan. In 2017, Mr. Gilreath had dental surgery, including a tooth pulled and an implant and cap installed. Since Mr. Gilreath did not have the dental benefits under the Total Safety Group Health Plan, he was required to pay for the cost of the dental work himself.

47.     In 2017, Mr. Gilreath was diagnosed with high blood pressure and was briefly hospitalized. Since Mr. Gilreath did not have the medical benefits under the Total Safety Group Health Plan, he was required to pay for the cost of the hospitalization himself.

48.     Due to the lack of medical coverage, Mr. Gilreath was required to forgo some medical care or pay for the treatment out of pocket. In 2018, Plaintiff was diagnosed with bladder and prostate cancer. Since the diagnosis of cancer, Mr. Gilreath has had multiple surgeries and radiation treatment. Mr. Gilreath was required to pay out of pocket for many of the expenses related to the medical treatment, surgery, and follow up care.

49.     If Mr. Gilreath had been covered by the Total Safety Group Health Plan, it is possible that Plaintiff's cancer would have been discovered at an earlier stage.

50.     As a beneficiary under the Total Safety Group Health Plan, Total Safety – as the Plan Sponsor and Plan Administrator of the Plan – was required under COBRA and ERISA to provide Ms. Gilreath with notice of the right to elect continuation health care coverage. However, neither Total Safety nor the Total Safety Group Health Plan sent a notice to Ms. Gilreath.

51.     Ms. Gilreath had her left aortic heart valve replaced in 2007. She is supposed to have regular check – ups for her  heart every three to four months. Since Total Safety and the Plan

failed to provide the COBRA notice to Ms. Gilreath, she has been examined only once by a physician.

52.     Additionally, Ms. Gilreath became pregnant around the time of Mr. Gilreath's termination. Since Mr. and Mrs. Gilreath did not have regular medical coverage (due to the failure of Total Safety and the Plan to provide notice of their right to elect continuation health care coverage), and Mr. Gilreath could not work for a period of time, Ms. Gilreath was unable to receive the necessary prenatal care. She ultimately suffered a miscarriage. Due to Mr. Gilreath's prostate cancer and the treatment for his cancer, the Gilreaths are unlikely to be able to have children in the future.

53.     Mr. Gilreath has spent approximately $50,000.00 in out of pocket medical and dental expenses for him and his wife since the termination of his employment by Total Safety, exclusive of the expenses related to his cancer.

54.     While Mr. Gilreath has been employed since the termination of his employment by Total Safety, many of his employers did not provide medical and dental insurance benefits. When Mr. Gilreath was able to enroll in medical and dental insurance benefits with a subsequent employer, the benefits provided by the employer were inferior to the health benefits provided by Total Safety and the Total Safety Group Health Plan.

55.      Total Safety and/or the Total Safety Health Plan failed to provide (a) the Initial Rights Notice to Mr. Gilreath and/or Mrs. Gilreath upon the commencement of their coverage in the Total Safety Health Plan, (b) a copy of the SPD for the Total Safety Health Plan to Mr. Gilreath and/or Mrs. Gilreath within ninety (90) days after the employee becoming a participant in the Plan, (c) the Continuation Coverage Election Notice to Mr. Gilreath and/or Mrs. Gilreath within fourteen (14) days of the occurrence of a qualifying event under COBRA, (d) the opportunity to elect

continuation health care coverage to Mr. Gilreath and/or Mrs. Gilreath, (e) the Open Enrollment Notice to Mr. Gilreath and/or Mrs. Gilreath during an open enrollment period, and/or (f) the same opportunity to Mr. Gilreath and/or Mrs. Gilreath to elect other medical coverage as other Plan participants during an open enrollment period.

56.     On information and belief, other covered employees and qualified beneficiaries were also deprived of these same rights and opportunities under COBRA and ERISA.

## COUNT I

### (THE FAILURE TO PROVIDE THE INITIAL RIGHTS
NOTICE TO MR. GILREATH IN VIOLATION OF ERISA § 606(a)(1))

57.     Plaintiffs repeat and incorporate the allegations contained in Paragraphs 1 through 56 as if fully set forth herein.

58.     ERISA Section 606(a)(1), 29 U.S.C. § 1166(a)(1), requires a group health plan, at the time of commencement of coverage under the plan, to provide written notice to each covered employee and spouse of the covered employee (if any) of their rights under COBRA – the Initial Rights Notice. Pursuant to 29 C.F.R. § 2590.606-1(a), the plan administrator is required to provide this notice.

59.     Total Safety, as the Total Safety Group Health Plan Administrator, and Total Safety Group Health Plan failed to provide, at the commencement of coverage under the Plan, written notice to each covered employee and covered spouse of the employee (if any) with the Initial Rights Notice in violation of ERISA Section 606(a)(1), 29 U.S.C. § 1166(a)(1). Because they were not advised of their COBRA rights, covered employees and qualified beneficiaries did not have notice, among other things, that they were responsible under ERISA Section 606(a)(3), 29 U.S.C. § 1166(a)(3), for notifying the Plan Administrator (in this case, Total Safety) of the occurrence of qualifying events described in ERISA Section 603(3) and/or (5), 29 U.S.C. §

1163(3) and/or (5).

60.     Because of their failure to provide the Initial Rights Notice to Mr. Gilreath, he requests that the Court award to him the statutory penalty of up to $110.00 per day from Total Safety and the Total Safety Group Health Plan.

**COUNT II**

**(THE FAILURE TO PROVIDE THE INITIAL RIGHTS
NOTICE TO MRS. GILREATH IN VIOLATION OF ERISA § 606(a)(1))**

61.     Plaintiffs repeat and incorporate the allegations contained in Paragraphs 1 through 56 as if fully set forth herein.

62.     ERISA Section 606(a)(1), 29 U.S.C. § 1166(a)(1), requires a group health plan, at the time of commencement of coverage under the plan, to provide written notice to each covered employee **and** spouse of the employee (if any) of their rights under COBRA – the Initial Rights Notice. Pursuant to 29 C.F.R. § 2590.606-1(a), the plan administrator is required to provide this notice.

63.     Total Safety, as the Total Safety Group Health Plan Administrator, and Total Safety Group Health Plan failed to provide, at the commencement of coverage under the Plan, written notice to each covered employee and spouse of the employee (if any) with the Initial Rights Notice in violation of ERISA Section 606(a)(1), 29 U.S.C. § 1166(a)(1). Because they were not advised of their COBRA rights, covered employees and qualified beneficiaries did not have notice, among other things, that they were responsible under ERISA Section 606(a)(3), 29 U.S.C. § 1166(a)(3), for notifying the Plan Administrator (in this case, Total Safety) of the occurrence of qualifying events described in ERISA Section 603(3) and/or (5), 29 U.S.C. § 1163(3) and/or (5).

64.     Because of their failure to provide the Initial Rights Notice to Mrs. Gilreath, as the spouse of a covered employee, she requests that the Court award to her the statutory penalty

of up to $110.00 per day from Total Safety and the Total Safety Group Health Plan.

## COUNT III

### (THE FAILURE TO PROVIDE THE SPD
### IN VIOLATION OF ERISA 29 U.S.C. § 1024(b)(1))

65.     Plaintiffs repeat and incorporate the allegations contained in Paragraphs 1 through 56 as if fully set forth herein.

66.     ERISA requires the plan administrator of a group health plan to furnish a copy of the summary plan description for the Total Safety Health Plan to the employee and/or qualified beneficiary within ninety (90) days after the employee becoming a participant in the Plan. *See* 29 U.S.C. § 1024(b)(1).

67.     Total Safety, as the Total Safety Group Health Plan Administrator, failed to provide a copy of the summary plan description for the Total Safety Health Plan to each covered employee and qualified beneficiary, including Mr. Gilreath and Mrs. Gilreath, within ninety (90) days after the employee becoming a participant in the Plan. *See* 29 U.S.C. § 1024(b)(1).

68.     Because of Total Safety's failure to provide a copy of the Summary Plan Description to Mr. Gilreath and Mrs. Gilreath, Plaintiffs request that the Court award to them the statutory penalty of up to $110.00 per day from Total Safety.

## COUNT IV

### (THE FAILURE TO PROVIDE THE CONTINUATION
### COVERAGE ELECTION NOTICE TO MR. GILREATH
### IN VIOLATION OF ERISA 29 U.S.C. § 1166(a)(4))

69.     Plaintiffs repeat and incorporate the allegations contained in Paragraphs 1 through 56 as if fully set forth herein.

70.     ERISA Section 606(a)(4), 29 U.S.C. § 1166(a)(4), requires a plan administrator to notify any qualified beneficiary of their rights under COBRA upon the occurrence of a

qualifying event.

71.     Total Safety, as the Total Safety Group Health Plan Administrator, and Total Safety Group Health Plan failed to provide the Continuation Coverage Election Notice to Mr. Gilreath following the termination of his employment by Total Safety. Because he was not advised of his right to elect continuation healthcare coverage, Mr. Gilreath was unable to elect the continuation health care coverage that he needed (a) to treat the injuries that he sustained as a result of the motor vehicle accident; (b) to provide the necessary dental care that he needed when he had the dental surgery; (c) to allow him to seek regular medical care which would have possibly prevented his hospitalization for high blood pressure; (d) to provide the medical treatment when he was hospitalized for high blood pressure; (e) to allow him to seek regular medical care which would have possibly detected his prostate and bladder cancer; and (f) to provide the medical treatment for prostate and bladder cancer. Mr. Gilreath requests that the Court order Total Safety and the Total Safety Health Plan to reimburse him for his out of pocket expenses that he incurred for the treatment that he received without the opportunity to elect continuation healthcare coverage, as well as to provide the medical benefits that he would have received had he had the opportunity to elect continuation healthcare coverage.

72.     Additionally, Mr. Gilreath requests that the Court award to him the statutory penalty of up to $110.00 per day from Total Safety, as the Plan Administrator of the Total Safety Group Health Plan, for the failure to provide the Continuation Coverage Election Notice to him.

## COUNT V

### (THE FAILURE TO PROVIDE THE CONTINUATION COVERAGE ELECTION NOTICE TO MRS. GILREATH IN VIOLATION OF ERISA 29 U.S.C. § 1166(a)(4))

73.     Plaintiffs repeat and incorporate the allegations contained in Paragraphs 1 through 56 as if fully set forth herein.

74.     ERISA Section 606(a)(4), 29 U.S.C. § 1166(a)(4), requires a plan administrator to notify any qualified beneficiary of their rights under COBRA upon the occurrence of a qualifying event.

75.     Total Safety, as the Total Safety Group Health Plan Administrator, and Total Safety Group Health Plan failed to provide the Continuation Coverage Election Notice to Mrs. Gilreath following the termination of Mr. Gilreath's employment by Total Safety. Because she was not advised of her right to elect continuation healthcare coverage, Mrs. Gilreath was unable to elect the continuation health care coverage that she needed (a) to provide the regular check – ups on her left aortic heart valve and (b) to receive the regular prenatal care following her pregnancy. Due to Mr. Gilreath's prostate cancer and the treatment for his cancer, the Gilreaths are unlikely to be able to have children in the future.

76.     Mrs. Gilreath requests that the Court order Total Safety and the Total Safety Health Plan to reimburse her and her husband for her out of pocket expenses that they incurred for the treatment that she received without the opportunity to elect continuation healthcare coverage, as well as to provide the medical benefits that she would have received had she had the opportunity to elect continuation healthcare coverage.

77.     Additionally, Mrs. Gilreath requests that the Court award to her the statutory penalty of up to $110.00 per day from Total Safety, as the Plan Administrator of the Total Safety Group Health Plan, for the failure to provide the Continuation Coverage Election Notice to her.

## COUNT VI

## (THE FAILURE TO PROVIDE THE OPEN ENROLLMENT RIGHTS NOTICE TO MR. GILREATH IN VIOLATION OF ERISA § 606(a)(1))

78.     Plaintiffs repeat and incorporate the allegations contained in Paragraphs 1 through 56 as if fully set forth herein.

79. Under COBRA, an employer must provide qualified beneficiaries with the same open enrollment rights as similarly situated active employees. Indeed, guidance on COBRA issued by the Internal Revenue Service ("IRS") states:

> **Q – 4.** Can a qualified beneficiary who elects COBRA continuation coverage ever change from the coverage received by that individual immediately before the qualifying event?
>
> **A – 4.**
>
> (c) If an employer or employee organization makes an open enrollment period available to similarly situated active employees with respect to whom a qualifying event has not occurred, *the same open enrollment period rights must be made available to each qualified beneficiary receiving COBRA continuation coverage.* An open enrollment period means a period during which an employee covered under a plan can choose to be covered under another group health plan or under another benefit package within the same plan, or to add or eliminate coverage of family members.

*See* Treas. Reg. 54.4980B-5, Q/A-4 (emphasis added).

80. As with covered employees and their beneficiaries, the open enrollment allows individuals on COBRA to: (a) enroll in other health plan types at open enrollment, even if they were not covered by the plan type at the time of the qualifying event (e.g., enroll in dental and vision coverage at open enrollment even if previously covered only by medical); (b) change their plan option within health plan types at open enrollment (e.g., change medical plan option from PPO to HMO); and (c) add dependents at open enrollment (as non-qualified beneficiaries with no independent COBRA rights), even if they were not covered at the time of the qualifying event.

81. Under ERISA Section 606(a), 29 U.S.C. § 1166(a), a group health plan must provide written notice to each covered employee and beneficiaries of their right to make the benefit plan changes during the open enrollment – the Open Enrollment Rights Notice.

82. Total Safety, as the Total Safety Group Health Plan Administrator, and Total Safety Group Health Plan failed to provide written notice to each covered employee, including Mr.

Gilreath, and beneficiaries with the Open Enrollment Rights Notice in violation of ERISA Section 606(a)(1), 29 U.S.C. § 1166(a)(1). Because they were not advised of their COBRA rights, covered employees and qualified beneficiaries did not have notice, among other things, of their right to enroll in other health plan types at open enrollment, change their plan option within health plan types, and add dependents.

83.    Because of their failure to provide the Initial Rights Notice to Mr. Gilreath, as the covered employee, he requests that the Court award to him the statutory penalty of up to $110.00 per day from Total Safety and the Total Safety Group Health Plan.

## **COUNT VII**

### **(THE FAILURE TO PROVIDE THE OPEN ENROLLMENT RIGHTS NOTICE TO MRS. GILREATH IN VIOLATION OF ERISA § 606(a)(1))**

84.    Plaintiffs repeat and incorporate the allegations contained in Paragraphs 1 through 56 and Paragraphs 79 through 82 as if fully set forth herein.

85.    Total Safety, as the Total Safety Group Health Plan Administrator, and Total Safety Group Health Plan failed to provide written notice to each covered employee and beneficiaries, including Mrs. Gilreath, with the Open Enrollment Rights Notice in violation of ERISA Section 606(a)(1), 29 U.S.C. § 1166(a)(1). Because she was not advised of her COBRA rights, covered employees and qualified beneficiaries did not have notice, among other things, of her right to enroll in other health plan types at open enrollment, change their plan option within health plan types, and add dependents.

86.    Because of their failure to provide the Initial Rights Notice to Mrs. Gilreath, as the covered employee, he requests that the Court award to her the statutory penalty of up to $110.00 per day from Total Safety and the Total Safety Group Health Plan.

## COUNT VIII

## (VIOLATION OF ERISA § 606(a)(2) and (4))

87.     Plaintiffs repeat and incorporate the allegations contained in Paragraphs 1 through 56 as if fully set forth herein.

88.     ERISA § 606(a)(2), 29 U.S.C. § 1166(a)(2), requires an employer of an employee under a group health plan to notify the administrator of qualifying events described in paragraph (1), (2), (4), or (6) of ERISA § 603, 29 U.S.C. § 1163, within 30 days of the of the date of the qualifying event.

89.     ERISA § 606(a)(4), 29 U.S.C. § 1166(a)(4), requires an administrator of a group health plan, at the time of a qualifying event, to notify any qualified beneficiary of the beneficiary's right to elect COBRA coverage.

90.     Total Safety was both the employer of employees under the Total Safety Group Health Plan and the Total Safety Group Health Plan Administrator and Sponsor. Total Safety, as the Total Safety Group Health Plan Administrator, was aware of qualifying events described in paragraph (1), (2), (4), and/or (6) of ERISA § 603, 29 U.S.C. § 1163, and, therefore, had a duty to notify any qualified beneficiary of his or her right to elect COBRA coverage as required by ERISA § 606(a)(4), 29 U.S.C. § 1166(a)(4).

91.     Total Safety, as the Total Safety Group Health Plan Administrator, failed to provide, at the time of qualifying events, written notice to qualified beneficiaries – including Plaintiffs – of their rights under the COBRA provisions of ERISA in violation of ERISA § 606(a)(4), 29 U.S.C. § 1166(a)(4).

92.     Because of their failure to provide the required notices to Plaintiffs, they request that the Court award to them the statutory penalty of up to $110.00 per day from Total Safety and

the Total Safety Group Health Plan.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs demand judgment against Defendants on each Count of

the Complaint and the following relief:

(1) An injunction requiring:

  (a) Total Safety, as the Total Safety Group Health Plan sponsor, to amend the Total Safety Group Health Plan to comply with COBRA;

  (b) Total Safety, as the Total Safety Group Health Plan Administrator, to allow members of the Class to elect COBRA coverage retroactive to their eligibility date or for an eighteen (18) month period;

  (c) The appointment of an independent administrator to administer COBRA benefits under the Total Safety Group Health Plan;

  (d) Total Safety, as the Total Safety Group Health Plan Administrator, and Total Safety Group Health Plan, to provide each covered employee and spouse of the covered employee with written notice of the rights provided under COBRA as required by ERISA § 606(a)(1), 29 U.S.C. § 1166(a)(1);

  (e) Total Safety, as the employer of employees covered under the Total Safety Group Health Plan, to provide the Total Safety Plan Administrator with notice of any qualifying event that occurred during the Class period as required by ERISA § 606(a)(2), 29 U.S.C. § 1166(a)(1);

  (f) Total Safety, as the Total Safety Group Health Plan Administrator, to provide notice to each current employee and each qualified beneficiary during the Class period of the right to notify the Total Safety Plan Administrator of any qualifying event described in ERISA § 603(3) and (5), 29 U.S.C. § 1163(3) and (5); and

  (g) Total Safety, as the Total Safety Group Health Plan Administrator, to provide the notice required by ERISA § 606(a)(4), 29 U.S.C. § 1166(a)(4), to each qualified beneficiary during the Class period of the rights provided under COBRA.

(2) A declaration that Plaintiffs and the Class are entitled to the benefits they would have received had they been provided the opportunity to elect COBRA coverage during the Class Period.

(3)    An order requiring Total Safety, as the Total Safety Group Health Plan Administrator, to pay penalties of $110.00 per day to:

    (a)    each covered employee and spouse of such employee from June 20, 2015 until the present for the failure to provide the notice required by ERISA § 606(a)(1), 29 U.S.C. § 1166(a)(1);

    (b)    each qualified beneficiary from the date notice was required of a qualifying event, beginning on or after June 20, 2015, until the present under ERISA § 606(a)(4), 29 U.S.C. § 1166(a)(4); and

    (c)    Plaintiffs request that the order require Total Safety to pay penalties of $110.00 per day per violation.

(4)    The cost of the suit, including attorneys' fees under ERISA § 502(g)(1), 29 U.S.C. § 1132(g)(1), and this Court's inherent equitable authority and powers.

(5)    Pre-judgment and post-judgment interest.

(6)    Other such and further relief as the Court deems appropriate.

DATED:  June 21, 2019

Respectfully submitted,

**SOUTHERLAND LAW FIRM**

*/s/ J. Alfred Southerland*
J. Alfred Southerland
State Bar No. 18860050
alf@southerlandlawfirm.com
4141 Southwest Freeway
Suite 300
Houston, Texas 77027
Telephone: (281) 928-4932
Facsimile:  (713) 228-8507

**ATTORNEYS FOR PLAINTIFFS
GREGORY GILREATH AND
EULA GILREATH**